EAGAN, J.
I. PROCEDURAL AND FACTUAL BACKGROUND
The appeal before the court was brought by the plaintiff, Steven Pineiro, pursuant to Ordinance No. 95-6. The defendants have not challenged the authority of this court to adjudicate the matter.
Prior to June 23, 1998, the plaintiff was an employee in the Mohegan Sun Casino. As part of this employment, the plaintiff was duly licensed by the Gaming Commission. His employment at the casino as a dealer depended upon his license. On June 23, 1998, Pineiro was arrested at the Foxwoods Resort Casino along with an employee of Foxwoods, Miguel Rivera, after it was alleged that a drug transaction had taken place between the plaintiff and Rivera. In his appeal the plaintiff claims that the defendant, Office of the Director of Regulations, unlawfully revoked his gaming license. He further claims that the defendant, Mohegan Tribal Gaming Authority, wrongfully and unlawfully barred him from the Mohegan Sun Casino and the Mohegan Tribal Reservation. As a result of these actions, the plaintiff alleges that his employment was terminated because he was no longer able to perform his job duties without a license.
The Criminal Information Summary portion of the Connecticut State Police Report states that Steven Pineiro was charged with Sale of Marijuana. However, the investigation report states that the actual charge was Possession of Marijuana. The case was assigned to Connecticut State Court G.A. 10 in New London. On December 15, 1998 the court in G.A. 10 dismissed the case.
Central among the evidence to support the original arrest was a Foxwoods Surveillance Tape, which was produced as part of an ongoing State Police investigation at the Foxwoods Casino. A review of the tape does reveal some type of handoff of an item resembling a napkin from the plaintiff to Rivera who, at the time of the transfer, was working as gaming pit supervisor at Foxwoods. According to the police report, Rivera then returns “numerous times” to his workstation over a period of 45 minutes. After approximately 45 minutes, Rivera picks up the napkin while under surveillance. Rivera is then arrested and hands over a napkin containing a glass vial holding a substance that was later field-tested as Marijuana. The napkin was never produced in the present appeal or in any of the prior hearings by the Gaming Commission. Rivera initially claimed that someone named Steve gave the Marijuana to him. As a result of this the plaintiff, Steven Pineiro, was taken *388 into custody; a further search of his person and car did not reveal the presence of any illegal substances. Rivera later recanted his claim in a sworn affidavit dated October 29, 1998. The plaintiff has consistently denied either possessing or giving drugs to Rivera. He stated that he had passed a napkin containing the address of a recently purchased home to Rivera. By admission of both men, the two had known each other while both worked at a casino in Puerto Rico.
On June 24, 1998, as the result of the arrest, the Mohegan Tribal Gaming Commission sent the plaintiff a letter revoking his gaming license and bailing him from the Mohegan Sun Casino and the Mohegan Tribal Reservation. The letter stated that the action was “based upon your arrest by the Connecticut State Police on June 23, 1998 for the Sale of Marijuana”. The letter cited as authority Section 7(b)(ii) of the Mohegan Tribe-State of Connecticut Gaming Compact. Notice of a right to appeal was given in the letter. The Gaming Commission stated that the presence of the plaintiff was a “threat to the gaming activities of the Tribe”. On July 22, 1998 a hearing was held at which plaintiff was present without a lawyer. The hearing was adjourned pending the outcome of the ci'iminal proceeding, which at that time had been scheduled for the next day. On December 30, 1998 another hearing was held where the plaintiff presented evidence of the dismissal of the pending charge against him, that of possession of Marijuana. The hearing was further adjourned. The Mohegan Gaming Commission then generated an investigative report dated January 26, 1999. The report contained several unsupported assumptions about the alleged drug transaction. It also asserts several facts as to the relationship between the plaintiff and Miguel Rivera. See Ex. D-l. Significantly, the plaintiff never had an opportunity to address the contents of the allegations in the investigative report. As a result at least in part of the report, a decision was rendered by the defendant, office of the Director of Regulation. By letter dated January 29, 1999, the plaintiff was informed that the prior action barring him from the Mohegan Sun Casino and the Mohegan Tribal Reservation was upheld. The present appeal alleges that the procedures employed by the defendants were wrongful and unfairly deprived the plaintiff of his ability to pursue and continue his employment.
II. THE LEGAL STANDARD TO BE EMPLOYED
Section 7(b)(iii) of the Mohegan Compact provides that “[t]he Tribal gaming agency shall establish a list of persons barred from the gaming facilities because their criminal history or association with career offenders or career offender organizations poses a threat to the integrity of the gaming activities of the Tribe”. Article XIII of the Constitution of the Mohegan Tribe of Indians of Connecticut, entitled Tribal Gaming Authority Amendment, Section 1 provides, in relevant part, “To the extent that tribal law does not otherwise govern a dispute, the Gaming Disputes Court may apply relevant provisions of Connecticut law.”
Article XI Section 1 of the Constitution of the Mohegan Tribe of Indians of Connecticut provides that the Mohegan Tribe, “in exercising its powers of self government, shall make no law inconsistent with The Indian Civil Rights Act of 1968 (25 U.S.C. Sections 1301-1303; 82 Stat. 77). The Indian Civil Rights Act, 25 U.S.C. Section 1302, provides that “No Indian Tribe in exercising powers of self government shall ... (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty oi' property without due process of law”. *389 Additionally this protection is also embodied in the Mohegan Constitution. See Article XI, Section 1(h). Jones v. Mohegan Tribal Gaming Authority 1 G.D.R. 15, 1 Am. Tribal Law 400, 1998 WL 35281215 (1998).
Accordingly, it is appropriate to apply a constitutional analysis to the instant facts. At least one United States Circuit Court has found that Due Process under the Indian Civil Rights Act (25 USCS Section 1302) is the same as that in the United States Constitution. Red Fox v. Red Fox, 564 F.2d 361 (9th Cir.1977), but see Groundhog v. Keeler, 442 F.2d 674 (10th Cir.1971). If the plaintiff has a protected property interest, it would flow from the Fifth and Fourteenth Amendments to the United States Constitution. Entitlement to procedural due process requires an underlying substantive entitlement or a protected property interest. New England, Savings Bank v. Lopez, 630 A.2d 1010, 227 Conn. 270 (1993). A person has a legitimate claim of entitlement to a benefit and is entitled to due process protections, if there are rules or mutually explicit understandings that support a claim of entitlement to the benefit. Parker v. Board of Education of the Town of Thomaston, 717 A.2d 117, 246 Conn. 89 (1998); see also Zimmerman v. Board of Education of the Town of Branford, 597 F.Supp. 72 (D.Conn.1984). Where restrictions exist as to how an employee may be terminated, the employee has a constitutionally protected property interest for purposes of a due process claim. Croslan v. Housing Authority for the City of New Britain, 974 F.Supp. 161 (D.Conn.1997)., United States Constitutional Amendments 5, 14. Additionally, a due process property interest in employment can be established by a law if it restricts the grounds on which an employee may be discharged. U.S.C.A. Const. Amend 14, Maloney v. Sheehan, 453 F.Supp. 1131 (D.Conn.1978).
Several decisions rendered in the neighboring Mashantucket Pequot Tribal Court are instructive on this issue. In Johnson v. Mashantucket Pequot Gaming Enterprise, 1 Mash.App. 21, 1 MPR 15 (1996) (Zampano, J.), the Appellate Court upheld the trial court’s finding that an employee’s rights to due process were violated based upon the fact that retained counsel was not allowed to attend the Board of Review hearing. In so finding, the court also found that an employee’s potential loss of a job and lost wages are significant deprivations of a protected property interest. Id. at 25-26, 1 MPR at 19. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court indicated a due process analysis generally involves the balancing of three factors:
First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; Third, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail.
Id. at 334-35, 96 S.Ct. 893.
Several Mashantucket Pequot cases have also addressed due process issues relevant to the present case. It has been held that a failure to supply a terminated employee with documentary evidence within one week prior to the post termination hearing deprived the plaintiff of his due process right to confront the evidence against him. Chase v. Mashantucket Pequot Gaming Enterprise, 2 Mash.Rep. 387, *390 394, 3 Mash. 112, 116 (1998)(Shibles, C.J.). “Adequate notice of evidence submitted against the plaintiff is a ‘fundamental requisite’ of ... due process rights under the Indian Civil Rights Act.” Id., quoting Morris v. Mashautucket Pequot Gaming Enterprise, 2 Mash.Rep. 358, 364, 3 Mash. 94, 97 (1998), citing Dugan v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 142, 146-147, 1 Mash. 104, 106 (1996). Finally, the inability of a terminated employee to cross-examine a witness has been held to be a deprivation of due process rights such as to justify a new hearing. Grossi v. Mashantucket Pequot Gaming Enterprise, 2 Mash.App. 19, 1 MPR 55 (1998) (Zampano, J.).
III. DISCUSSION
As an initial matter, the court is in full agreement with the defendants’ general claim that the Tribal Gaming Authority has authority to protect the integrity of the gaming enterprise by excluding from the casino and reservation persons known to engage in illegal practices. Certainly the protection of employees and patrons from known drug dealers is a laudable goal. There is ample evidence that the Compact between the State of Connecticut and the Mohegan Tribal Authority is designed to ensure that the public has confidence in the overall integrity of the gaming occurring on the Reservation. However, the authority cannot be exercised at the expense of the Constitution. The authority must also be used in accordance with basic due process rights.
The court adopts in general terms the existing jurisprudence from the Mash-antucket Pequot Appeals Court and employs a balancing of the three factor's as set forth by the United States Supreme Court in Mathews v. Eldidge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). First, the private interest affected in this case involves the plaintiff’s valid property interest in his continued employment. This interest is a protected interest under the Constitution. Johnson v. Mashantucket Pequot Gaming Enterprise, 1 Mash.App. 21, 1 MPR 15 (1996) (Zampano, J.). Croslan v. Housing Authority for the City of New Britain, 974 F.Supp. 161 (D.Conn.1997).
Second, the risk of erroneous deprivation appears to be significant under the facts of this case for several reasons, including the fact that the Criminal Indictment charging document is inconsistent with the charge that was eventually pursued and then dismissed in the State Court criminal proceeding. Additionally, the lack of a chain of custody as to the alleged transfer of the napkin is also troubling to the court. Finally, the inability of the plaintiff to challenge important factual assertions in the January 26, 1999 Investigative Report substantially increases the risk of erroneous deprivation. “Adequate notice of evidence submitted against the plaintiff is a ‘fundamental requisite’ of ... due process rights under the Indian Civil Rights Act.” Chase v. Mashautucket Pequot Gaming Enterprise, 2 Mash.Rep. 387, 394, 3 Mash. 112, 117 (1998) (Shibles, C.J.) quoting Morris v. Mashautucket Pequot Gaming Enterprise, 3 Mash. 94, 97, 2 Mash.Rep. 358, 364 (1998), citing Dugan v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 142, 146-147, 1 Mash. 104, 106 (1995). The failure to produce this document is critical to the plaintiffs ability to present his side of the story. The existence of the post-hearing investigative report effectively resulted in the inability of the plaintiff to cross-examine a potential witness (the investigator) and as such is a deprivation of due process rights justifying a new hearing. Grossi v. Mashantucket Pequot Gaming Enterprise, 2 Mash.App. 19, 1 MPR 55 (1998) (Zampano, J.). The *391 plaintiff had a right to address these issues in light of the unique facts of his case, where the criminal charges that formed the basis of his termination were dismissed. The probable value of requiring that the investigative report be made available to the plaintiff is substantial because access to the report would have greatly enhanced his ability to challenge assertions at the hearing.
The fiscal and administrative burdens imposed by requiring a rehearing in this case are not sufficient to outweigh the above two factors. To produce the investigative report prior to scheduling a hearing-on termination would not, in the opinion of the court, be unduly burdensome either fiscally or administratively in comparison to the risk of erroneous deprivation that could occur. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
IV. CONCLUSION
For the reasons set forth above, the Tribal Gaming Authority is hereby ordered to conduct a rehearing consistent with this opinion of the termination from employment and exclusion of Steven Pinei-ro at a mutually agreed upon time, but no later than four weeks from the date of this decision.