MANFREDI, Judge.
The Plaintiff filed this appeal on April 11, 2002, from a decision of the Director of Regulations regarding revocation of a gaming license. The Plaintiff has represented himself pro se throughout this matter. This appeal is brought pursuant to the provisions of Tribal Ordinance 95-6.
The record before the court consists of the following:
1. A January 22, 2002 letter to Mr. Cherestal from Edward F. Pickett, Jr. barring him from the Casino based upon his arrest on January 5, 2002 by the Norwich Police Department for carrying a dangerous weapon and carrying a weapon in a vehicle. The letter indicates that the Gaming Commission found his presence to pose a threat to the integrity of the gaming activities of the Tribe.
2. Also included in the record is:
(a) a letter dated February 12, 2002 to Mr. Cherestal from John B. Meskill scheduling a hearing for February 25, 2002;
(b) a letter from John B. Meskill dated March 21, 2002 delivering to Mr. Cherestal a notice of a decision based upon the hearing of February 25, 2002; and
(c)a copy of the decision of the hearing officer, Michael P. Brown, dated March 21, 2002; and a transcript of the hearing.
At the hearing below, the only evidence presented against Mr. Cherestal was a copy of the letter barring him from the Casino referred to above and a copy of the Police log from the New London Day dated January 6, 2002 indicating that Anthony Cherestal had been charged with driving with a suspended license, carrying a dangerous weapon and carrying a weapon in a vehicle. It should be noted that the New London Day exhibit was not included in the record before the court, although it was referred to in the transcript.
The only testimony relating to the incident for which Mr. Cherestal was arrested was from Mr. Cherestal himself. At the hearing he indicated that he was picked up at his home by two of his cousins to go to a bar called the Bella Notte, The car that his cousins picked him up with apparently belonged to a girlfriend of another party. While at the Bella Notte parking lot an argument ensued between one of the cousins and a third-party. The cousin in the argument took a butcher knife out of the car and chased the other third-party with the knife. Mr. Cherestal disarmed his cousin and took the knife away from him and threw it in the car. He then proceeded to try to drive his cousin home. On the way home, the car was stopped by the Norwich Police and all three of the individuals were arrested.
At the time of the hearing the charges against Mr. Cherestal had not yet been disposed of. Mr. Cherestal indicated that his next court date was on March 7, 2002. The hearing officer stated on the record that he was not going to pass judgment at *499 that time. He then went on to state that he wanted Mr. Cherestal to send him paperwork from the court stating what happened to his case when Mr. Cherestal finished there. The record reflects that the hearing officer stated “we’ll follow up with you at some point in the near future, okay?” In closing the hearing, the hearing officer stated, “okay, thank you very much for coming in today and please keep us apprized on what happens on the 7th.... yeah, just fax it to us or send it in the mail to us. Thank you very much.”
In his decision of March 21, 2002, the hearing officer stated that Mr. Cherestal did call the Gaming Commission Office after the court date and was instructed to provide the court disposition via fax. The hearing officer also stated that “as of March 20, 2002 no court disposition information has been received from Mr. Cherestal. As a result of his failure to provide this information, a determination on his suitability for licensing cannot be made. His opportunity to retain his license is forfeited.... Mr. Cherestal’s gaming license is revoked for failure to inform the MTGC of his court disposition. The bar and exclusion from Mohegan Sun Casino remains in effect.”

DISCUSSION

Mohegan Tribal Ordinance 95-6 Section 2(j) states that:
“The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutoiy authority of the agency; (3) made upon unlawful procedures; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by an abuse discretion or clearly unwarranted exercise of discretion.”
The Court finds that the Plaintiffs continued right to employment upon the Reservation is a substantial right which entitles him to due process protections found in the Indian Civil Rights Act of 1968, 25 USC Section 1302 and'Article XI Section 1(h) of the Mohegan Constitution. See Pineiro v. Office of Director of Regulations, 1 G.D.R. 43, 2 Am. Tribal Law 386, 1999 WL 34976688 (1999) and, Trokov v. Office of the Director of Regulation, 1 G.D.R. 55, 2 Am. Tribal Law 398, 2000 WL 35733915 (2000), Worthen v. Office of the Director Regulation, et al. 1 G.D.R. 64 (2000).

REVIEW

It is clear that the Tribal Gaming Authority “has authority to protect the integrity of the gaming enterprise by excluding from the Casino and Reservation persons known to engage in illegal practices.” Pineiro, 2 Am. Tribal Law at 389-90, 1999 WL 34976688, at *3-4. However, in carrying out its duties to protect the integrity of the Tribe the Authority and its agents must afford the individuals involved due process of law. Additionally, as set forth in Ordinance 95-6 the decision of the Office of Director of Regulation will be set aside where it is clearly erroneous in view of the reliable, probative, and substantia] evidence on the whole record'or, iff arbitrary or capi'icious or characterized by abuse of discretion or is a clearly unwarranted exercise of discretion.
The only evidence submitted against the Plaintiff at the hearing was the letter excluding him from the Reservation and a newspaper account of his arrest. No police reports were admitted; no affidavits, no warrants or other documents produced *500 by investigation or otherwise were submitted to indicate the factual events giving rise to the Plaintiffs arrest. The only factual account of the circumstances relating to the arrest were given by the Plaintiff himself. The Plaintiffs testimony taken at its worst established only that the bouncers at the night club where the incident took place asked the Plaintiff to intervene with his cousin who was involved in an altercation with a knife. The Plaintiff put his cousin in a car and attempted to drive him home although at the time the Plaintiff did not have an operator’s license. The knife that the cousin had in his possession was thrown into the car by another party before leaving.
These facts aside, this is not the reason cited for the hearing officer’s decision to revoke the Plaintiffs gaming license. The decision was based upon Mr. Cherestal’s “failure to inform the MTGC.of his court disposition.” A reading of the transcript reveals that the request to inform the hearing officer of the results of the March 7, 2002 court date was casual in nature. The hearing officer did not inform Mr. Cherestal that the information requested was a requirement of the hearing nor did he inform Mr. Cherestal that if he failed to provide the information any adverse consequences would result. Furthermore, there was no continuance date for the hearing which would have afforded Mr. Cherestal the opportunity to provide an explanation for the failure to provide further information. Read as a whole, there is no indication in the transcript that the request to provide further information was a requirement of the hearing officer that would result in serious adverse consequences if Mr. Cherestal failed to comply for any reason.
Due process encompasses two concepts, that of procedural due process and that of substantive due process. The Supreme Court has said of procedural due process:
“Unlike some legal rules, [it] is not a technical conception with a fixed content unrelated to time, place and circumstances.” ... [D]ue process is flexible and calls for such procedural protections as the particular situation demands .... Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the government and private interests that are affected.... More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, (citations omitted)
Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
Substantive due process on the other hand relates to the idea that “no person shall be deprived of his life, liberty, or property for arbitrary reasons.” 16(a) Am-Jur 2nd Constitutional Law Section 816. This concept is embodied in Mohegan Ordinance No. 95-6 Section 2(j).
This court concludes that after a review of the hearing below that Mr. Cherestal was denied both procedural and substantive due process in this matter.
First,, as to the procedural due process it is clear that Mr. Cherestal’s private interest in continued employment *501 was affected by the action below. Mr, Cherestal’s gaming license was revoked for failure to inform the MTGC of his court disposition. Nothing in the hearing informed Mr. Cherestal that this would be the result. Nothing disclosed during the course of the hearing indicated an urgency to the request by the hearing officer. In short, nothing put Mr. Cherestal on notice that if for some reason he failed to provide the requested information to the hearing officer that any adverse consequences would result. It would have been a simple and logical procedure for the hearing officer to give Mr. Cherestal a deadline for reporting back to him and informing him of the potential consequences if a report back was not made. Furthermore, an examination of the Tribal Ordinances and Rules of Practice for the Gaming Commission fails to provide this court with any authority for the hearing officer to revoke a license based upon the failure to report back.
This was the only reason given in the decision for the revocation of Mr. Cherestal’s gaming license. However, this court notes further that the only materials or evidence submitted in support of the underlying charges against Mr. Cherestal was a newspaper recording of his arrest. No other evidence of his involvement in any criminal offenses was submitted at the hearing other than Mr. Cherestal’s own testimony, which has been previously discussed. Even assuming that testimony was not given credibility, it cannot result in some adverse inference against Mr. Cherestal. In other words, the fact that the hearing officer may not have believed his account of the events does not give rise to any inference as to how the events actually did occur without some other evidence being presented. Taita LaPlante,, Handbook of Conn. Evidence, 2d, Sec. 8.2.4; Novak v. Anderson, 178 Conn. 506, 423 A.2d 147 (1979). A decision to bar Mr. Cherestal and/or revoke his gaming license based upon a newspaper disposition report alone is clearly arbitrary and in violation of due process and Mohegan Tribal Ordinance 95-6.
The decision of the hearing officer is reversed and the Commission is directed to lift the bar of exclusion and reinstate Mr. Cherestal’s gaming license within thirty (30) days.