GUERNSEY, Chief Judge.
This case, a companion to Edwin Figueroa II v. Office of the Director of Regulation, GDTC-AA-127, is an appeal from a final decision of the Director of Regulation barring and excluding the Plaintiff from Mohegan Sun Casino and revoking his gaming license. The Plaintiff appeared pro se in both the hearing before the Director on March 19, 2002 and in the instant appeal pursuant to the provisions of MTO 95-6. The events giving rise to this case occurred on March 5, 2002 (coincidentally, the same day that the Plaintiff did not appear for a show cause hearing that is the subject of Edwin Figueroa, II v. Office of the Director of Regulation, GDTC-AA-127), when the Plaintiff was allegedly found in possession of a counterfeit Mohegan Sun employee ID/Gaming License.
The record submitted by counsel for the Defendant consists of the following:
1. Mohegan Tribal Gaming Commission Incident Report.
2. Letter from Edward F. Pickett, Jr., Assistant Director, Mohegan Tribal Gaming Commission dated March 8, 2002 barring the Plaintiff from the Mohegan Sun Casino and all gaming facilities, and giving notice of the right to appeal.
3. A transcript of the Hearing conducted March 19, 2002 before Michael P. Brown, Hearing Officer.
4. Letter dated April 7, 2002 from the Plaintiff to John B. Meskill, Director.
*503 5. Letter of transmittal dated March 21, 2002 accompanying a Notice of Decision dated March 21, 2002, barring and excluding the Plaintiff and revoking his gaming license.
The Court notes that, although the Incident Report clearly indicates that attachments accompanied it, these for some reason were not made a part of the record, which is also devoid of the counterfeit ID/Gaming license or a copy of it. If the same were introduced at the Hearing, it clearly would constitute part of the “entire record of the proceeding appealed from” as required by MTO 95-6, Section 2{i).
At the Hearing held March 19, 2002, portions of the Incident Report were read into the record. This described the incident occurring March 5, 2002 at 7:45 p.m., in which the Plaintiff, when asked to produce a proper nametag and gaming license, stated that he had forgotten his nametag, and quickly flashed a green Mohegan Sun folding wallet containing what appeared to be his gaming license. Upon examination this was found to be a forgery. The Plaintiff allegedly admitted it was a joke, and that the ID/Gaming license was manufactured with a fake name and a bogus picture pursuant to a scheme with his girlfriend in order to demonstrate how easily they could enter the casino through the employee entrance without being challenged.
The Plaintiff testified at the Hearing on March 19, 2002 to a somewhat different series of events that led to his present difficulty, and denied that his girlfriend had anything to do with the forgery. According to Ms testimony, he was asked for his nametag, and told the Investigator it was in his locker, and when asked for his license, he then realized it was left in the car. The Investigator noticed the ID/Gaming License was a copy, and Mr. Figueroa stated he would get the original license on his first break. Although somewhat confusing, Mr. Figueroa's testimony indicates that he told the Investigator that the information on the ID/Gaming License was false. He also described having access to a computer at his son’s babysitter’s house, and that he scanned his own license and made changes to it, but asserts that he never intended to bring the altered ID/Gaming License to the casino. Although not a model of clarity, Mr. Figueroa’s testimony at the Hearing and his argument before this Court assert that he never intended any disrespect to the Casino in any way, and that his concern was over Casino security.

DISCUSSION

Prior decisions of this Court have found a protected property interest in continued employment for purposes of a due process claim, at least in the context of an appeal from the revocation of a Gaming License. Piniero v. Office of Director of Regulations, 1 G.D.R. 43, 44-45, 1 Am. Tribal Law 598 (1999). See also Tribal-State Gaming Compact, Section 5(g). Unlike the situation in the companion case of Edwin Figueroa II #». Office of the Director of Regulation, GDTC-AA-127, (hereinafter Figueroa I), there is no issue as to the adequacy of notice of hearing, and Mr. Figueroa was given the opportunity to testify as to his version of the events. This is in contrast to the situation in Pineiro, where the Plaintiff never had. an opportunity to address the contents of an investigative report used as evidence against him.
Section 10(a) of The Mohegan Tribe-State of Connecticut Gaming Compact (hereinafter “Tribal-State Gaming Compact”) establishes the default authority of the “Tribal gaming agency” (defined as “the Mohegan Tribal Gaming Commission” in Section 2(z)) to exercise all or any portion of the authority vested in the State gaming agency pursuant to various see- *504 tions of the Compact, including sections 5, 7(a) and 7(b) in the event that the State gaming agency declines to exercise all or any portion of the authority vested in it pursuant to these enumerated sections (Section 5 also sets forth the role of the Tribal gaming agency in the issuance of licenses). The Mohegan Tribal Gaming Commission, established pursuant to MTO 2000-03, has assumed these tasks, and no evidence suggests that the actions in this case conflict with the exercise of authority by the State gaming agency. (This issue might have arisen in Figueroa I, where a license revocation by the Tribal gaming agency was based in part on a prior action by the Division of Special Revenue declining to revoke or suspend the Plaintiffs license, but for the dismissal of Figueroa I on grounds of justiciability).
As to the authority to be exercised, Section 7(a) of the Compact requires that the Tribal gaming agency shall:
adopt standards of operation and management to govern all gaming operations utilizing the authority of the Tribe to operate games of chance ... Such standards shall protect the public interest in the integrity of the gaming operations and shall reduce the dangers of unsuitable, unfair or illegal practices and methods and activities in the conduct of gaming.
The authority cited by the Notice of Decision from which this appeal is taken, to establish a list of persons barred from the gaming facilities, actually requires the Tribal gaming agency to “establish a list of persons barred from the gaming facilities because their criminal history or association with career offenders or career offender organizations poses a threat to the integrity of the gaming activities of the Tribe.” Tribal-State Gaming Compact, Section 7(b)(ii). It is also provided that “the Tribe shall also exclude persons engaging in disorderly conduct or other conduct jeopardizing public safety in the gaming facility.” Id.
The authority to investigate, at any time, any person holding a gaming license is conferred by Section 5(g) of the Tribal-State Gaming Compact, exercisable by the State gaming agency or, pursuant to Section 10(a), by the Tribal gaming agency. A gaming license may be revoked or suspended upon information concerning facts, arising either prior to or since the issuance of the original license, which would have justified denial of the original license. Tribal-State Gaming Compact, Section 5(g). The standard for denial of a Gaming License is as follows:
The State gaming agency may deny a gaming employee license to any applicant who: (i) has been determined to be a person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chances of unfair or illegal practices, methods, and activities in the conduct of the gaming activities permitted hereunder; ... or (ii) has failed to provide any information reasonably required to investigate the application for a gaming employee license or to reveal any fact material to such application, or has furnished any information which is untrue or misleading in connection with such application.
Tribal-State Gaming Compact, Section 5(g).
As to the instant appeal, Section 2(j) of MTO 95-6 provides that the Court shall affirm the decision of the agency:
unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in ex *505 cess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the w’hole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion ...
Although his account differs slightly from the narrative of the Incident Report, the Plaintiff admitted in his testimony before the Hearing Officer the fabrication of the gaming license. It is clear that, even if the Plaintiffs explanation for his actions were accepted, his admitted actions in fabricating a false gaming license, using a false name and other information, “pose a threat to the effective regulation of gaming”, Tribal-State Gaming Compact, Section 5(g), and interfere with the Tribe’s assigned task of providing proper identification badges for all licensed gaming employees. Tribal-State Gaming Compact, Section 5(h).
The action of the Director of Regulation barring and excluding the Plaintiff based on the Notice of Decision dated March 21, 2002 is within his authority, supported by substantial evidence and conforms to the mandate of the Tribal-State Gaming Compact. The Plaintiff has not been prejudiced by any error of law or procedure, or abuse of discretion.
The decision is affirmed.