GUERNSEY, Chief Justice.
On July 31, 2002, there appeared in the Police Log of the Day newspaper a report that the Plaintiff herein, Dereck Nesbit, was charged with two counts of first-degree failure to appear in Court. On this basis, the Mohegan Tribal Gaming Commission scheduled a Show Cause Hearing for August 17, 2002. Notice was sent to Mr. Nesbit at 73 Oneco Avenue, Norwich, CT 06340 by certified mail on August 16, 2002, and contained the warning that “failure to appear for the scheduled hearing will result in the suspension of [his] license.” Commission Exhibit 1.
This notice was returned, undelivered, by the Post Office with the notation “NSN”, or that there was no such number. On the scheduled date of the hearing, notice was again sent to Mr. Nesbit by certified mail informing him of the re-scheduled hearing date of September 11, 2002. In addition, personal service of the notice was made by an MTGC inspector on September 6, 2002. The record reflects that this hearing was continued, at Mr. Nesbit’s request, to September 16, 2002. Mr. Nes-bit failed to appear for the hearing, and on September 18, 2002 the Hearing Officer filed his decision revoking Mr. Nesbit’s non-gaming license on grounds of his failure to appear for the hearing after receiving proper notice.
This appeal was filed on September 26, 2002 pursuant to MTO pursuant to MTO 95-4. During the pendency of this appeal, MTO 95-4, which had previously been held to apply only to gaming licenses, Ager v. Office of the Director of Regulation, 1 G.D.R. 1 (1997), was repealed by MTO 2002-13, which specifically allows final agency decisions concerning non-gaming licenses to be appealed to the Gaming Disputes Court. MTO 2002-13 Section Ke).
II. STANDARD OF REVIEW.
The standard for review of an agency’s final decision in an appeal filed pursuant to MTO 2002-13 is substantially similar to that under the Connecticut Administrative Procedures Act, C.G.S. § 4-183(j). LaPietra v. Office of the Director of Regulation, 1 G.D.R. 126, 127 (2003). “If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding, the decision must be upheld.” Id. The Court is not permitted to substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. MTO 2000-13 Section3(j).
Nevertheless, the Court may not affirm a decision not supported by substantial evidence in the record, Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. 702, 709, 692 A.2d 834 (1997). If substantial rights of the Plaintiff have been prejudiced by administrative findings, inferences, conclusions, or decisions affected by error of law or clearly errone *547 ous in view of the reliable, probative, and substantial evidence on the whole record, the Court shall sustain the appeal and may either remand the case or enter judgment. MTO 2000-13 Section 3(j)-(k).
III. DISCUSSION
A prior decision of the Gaming Disputes Court held that a decision of the Director of Regulation based solely on a newspaper account is arbitrary and capricious. Cherestal v. Office of the Director of Regulation, 1 G.D.R. 95 (2003). In the instant case, although the opinion of the Hearing Officer concluded that “[i]n its hearings, the MTGC will employ a ‘preponderance of the evidence’ standard of proof’, the decision proceeded to default the Plaintiff for failure to appear. On appeal, the Defendant argues that the ability to compel attendance at a Show Cause Hearing is essential to the effective regulation of gaming, and a refusal to attend, after proper notice was given, justifies the entry of a default. Under the circumstances of this case, the Court agrees.
The authority to investigate, at any time, any person holding a gaming license is conferred by Section 5(g) of the Tribal-State Gaming Compact, exercisable by the State gaming agency or, pursuant to Section 10(a), by the Tribal gaming authority. A Gaming License may be revoked or suspended upon information concerning facts, arising either prior to or since the issuance of the original license, which would have justified denial of the original license. Tribal-State Gaming Compact, Section 5(g). The standard for denial of a Gaming License is as follows:
The State gaming agency may deny a gaming employee license to any applicant who: (i) has been determined to be person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chances of uniair or illegal practices, methods, and activities in the conduct of the gaming activities permitted hereunder; or (ii) has failed to provide any information reasonably required to investigate the application for a gaming employee license or to reveal any fact material to such application, or has furnished any information which is untrue or misleading in connection with such application.
Tribal-State Gaming Compact, Section 5(g).[1]
In the instant case, the Respondent was careful to ensure that the Plaintiff' received notice of the Show Cause hearing. In this regard, Section 6 of the Mohegan Tribal Gaming Commission’s Administrative Hearing Procedures Rules of Practice addresses the issue of the failure.of a Respondent to appear for such a hearing:
*548 In any duly noticed proceeding where the respondent fails to appear, the hearing officer, upon a finding of actual or constructive notice of the pendency of such proceedings, may note such failure upon the record, and render a decision by default.
As has been repeatedly observed, MTO 2002-13 closely follows many of the provisions of Conn. Gen.Stat. § 4-183. Gruntz v. Office of the Director of Regulation, 1 G.D.R. 105, 106 (2003). With respect to the authority of a hearing officer to render a decision by default, Conn. Gen.Stat. § 4-177(c) is instructive:
(c) Unless precluded by law, a contested case may be resolved by stipulation, agreed settlement, or consent order or by the default of a party.
Although this provision is not incorporated into MTO 2002-13, the intention underlying this Ordinance to follow State administrative procedure lends authority to a hearing officer to render a decision based on the default of a party:
Under the UAPA, the Commissioner clearly had the authority to resolve her department’s license revocation proceeding by default. See General Statutes § 4-177(c) (“[ujnless precluded by law, a contested case may be resolved by stipulation, agreed settlement, or consent order or by the default of a party”). As the Appellate Court remarked in interpreting one provision of this statute: “The duties of the defendant, as the head of an administrative agency, necessarily includes the right to exercise discretion ... [T]he essence of such of discretionary power is that the agency or commission may choose which of several permissive courses will be followed ... In this case, the defendant entered into a stipulation with the plaintiff ...” (Citations omitted; internal quotation marks omitted.) Albert Mendel & Son, Inc. v. Krogh, 4 Conn.App. 117, 121, 492 A.2d 536 (1985). The discrete act of entering the default judgment constitutes the final decision in the contested case.
McAllister et al. v. Insurance Department, 29 Conn. L.Rptr. 706, 2001 WL 492350, (Conn.Super., April 26, 2001).
For the reasons set forth above, it is held that the judgment by default rendered by the Hearing Officer, in a duly noticed proceeding where a finding of actual notice is made and the holder of a gaming or non-gaming license fails to appear, is not in violation of constitutional or statutory provisions, in excess of statutory authority, made upon unlawful procedure or affected by other error of law, and is not arbitrary, capricious, or characterized by an abuse of discretion.
The decision of the Hearing Officer is affirmed.

. The Compact also provides that non-gaming employees shall be subject to investigation by the "State law enforcement agency" (the Connecticut State Police or such other agency as the State may designate) and subject to dismissal from their employment if it is determined that "their conduct in the course of their employment poses a threat to the effective regulation of gaming or creates or enhances the dangers of unfair or illegal practices, methods and activities in the conduct of gaming, subject to the same rights of appeal as are provided in sub-section (i) above." Tribal-State Gaming Compact, Section 5(j). In the instant case, the Respondent claims authority under, inter alia, Section 13(a) of the Tribal-State Gaming Compact, giving the "Tribal gaming agency” the '‘primary responsibility for oversight ol tribal gaming operations ..." The apparent intent expressed in the Compact to set a higher standard for gaming licenses as opposed to non-gaming licenses, and to tie termination of non-gaming employees to conduct in the course of their employment has not been addressed. However, in view of the conclusion that the Respondent’s decision rendered by default is valid, this issue need not be resolved in this case.