MEMORANDUM OF DECISION ON PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT’S OBJECTION THERETO
JANE W. FREEMAN, Associate Judge.
This case arises out of the termination of the Plaintiffs employment as a crew leader in the public works department of the Defendant, on January 14, 2004. The Plaintiff filed a Complaint on March 29, 2004, in which he alleged that: (1) the termination of his employment was in violation of the Mohegan Tribal Discriminatory Employment Practices Ordinance, M.T.0.2002-04 (“Ordinance”) (Complaint, ¶ 14); (2) the procedures used in connection with the termination of his employment violated his due process rights (Complaint, ¶¶ 17-23); and (3) the Defendant has slandered the Plaintiff by terminating his employment for sexual harassment (Complaint, ¶[¶ 25-26).
The Defendant’s Amended Answer and Defenses were filed on July 16, 2004. Thereafter, the Defendant filed a Motion for Summary Judgment, with supporting affidavits, a deposition transcript and Defendant’s Memorandum of Law in Support of Motion for Summary Judgment (“Defendant’s Memorandum”), which included the Defendant’s Statement of Undisputed Facts, Moh.R.P. § 47. The Defendant contends that there are no genuine issues of material fact and that it is entitled to summary judgment on the Plaintiffs Complaint. In response, the Plaintiff filed Plaintiffs Statement As To Whether Defendant’s Asserted Facts Are Admitted or Denied, Moh.R.P. § 47(a); Plaintiffs Statement of Material Facts Which The Plaintiff Contends There is A Genuine Issue to be Tried, Moh.R.P. § 47(b); and Plaintiffs Objection to Defendant’s Motion for Summary Judgment (“Plaintiffs Objection”). The Defendant then filed Defendant’s Reply to Plaintiff s Objection to Defendant’s Motion for Summary Judgment.
I. Standards for Summary Judgment
The Defendant has moved for summary judgment pursuant to Moh.R.P. § 47, which provides in pertinent part as follows:
... each Party filing a Motion for Summary Judgment shall attach to the Motion a separate short and concise statement of the material facts, as to which the moving party contends there is no genuine issue to be tried and a memo-randa of law in support of the Motion
Moh.R.P. §47.
The balance of Moh.R.P. § 47 sets forth the supporting documents a movant is required to file with a summary judgment motion and the responsive documents a party opposing summary judgment is required to file; it does not, however, set forth the legal standard to be applied on a *437 summary judgment motion.[1] Many courts in other jurisdictions have held that summary judgment shall be granted “if the pleadings, affidavits and other documentary proof show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.” Ryan Transportation, Inc. v. M & G Associates, 266 Conn. 520, 525, 832 A.2d 1180 (2003); Bartha v. Waterbury House Wrecking Co. Inc., 190 Conn. 8, 11, 459 A.2d 115 (1983); Wallace v. MTGA, 2 G.D.R. 45, — Am. Tribal Law-, 2004 WL 5660583 (2004).
The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. Suarez v. Dickmont Plastics Corporation, 229 Conn. 99, 105, 639 A.2d 507 (1994) (quotation omitted). A material fact is a fact that will make a difference in the result of the case. Yanow v. Teal Industries, Inc., 178 Conn. 262, 422 A.2d 311 (1979). “In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.” Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000). Summary judgment “is appropriate only if a fair and reasonable person could conclude only one way.” Miller v. United Technologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
Once the moving party has presented evidence in support of the Motion for Summary Judgment, the opposing party must present evidence that demonstrates the existence of some material, disputed factual issue. Daily v. New Britain Machine Co., 200 Conn. 562, 568, 512 A.2d 893 (1986). It is not enough for the opposing party merely to assert the existence of a disputed issue. Id., Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15, (1998). The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Appleton v. Board of Education, supra, 254 Conn, at 209, 757 A.2d 1059.
Wallace v. MTGA, supra, 2 G.D.R. 45-46, -— Am. Tribal Law at-, 2004 WL 5660583.
Since the purpose of a summary judgment motion is to eliminate the delay and expense incident to a trial when there is no real issue to be tried, Dorazio v. M.B. Foster Electric Co., 157 Conn. 226, 228, 253 A.2d 22(1968), the legal standard herein-above set forth is consistent with that purpose. Therefore, a summary judgment motion filed under Moh.R.P. § 47 shall be granted by this Court if the pleadings, affidavits and other documentary proof show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law I n addition, the party moving for summary judgment under Moh.R.P § 47, has the burden of showing the absence of any genuine issue as to all material facts, and the opposing party must present evidence that demonstrates the existence of *438 some material, disputed factual issue. The parties may sustain this burden by supporting their statements of material facts to be filed under Moh.R.P § 47, with affidavits, sworn depositions, disclosures, written admissions and other documentary evidence setting forth specific: facts showing that there is no material issue for trial.
LI. Summary Judgment May Be Granted in Actions under M.T.O. 2002-04
The Plaintiff contends that his right “to have a hearing to challenge the allegations against him is clear in the ordinance” (Plaintiffs Objection, pp. 5-6). As authority, he cites § 108(A).1. and (C) of the Ordinance which provide for a “de novo review in the appropriate Mohegan Court” in actions brought under the Ordinance. The Plaintiffs apparent claim is that summary judgment; is neither appropriate nor available in actions brought under M.T.0.2002-04 and that the Court must hold a de novo hearing before rendering any judgment.
However, the intent of the provisions in § 108(A).l. and (C) providing for a “de novo” review in this Court, is to make clear that challenges to employment decisions under the Ordinance are not subject to a “record review”, in which a Court would be limited to reviewing only items in the administrative record; instead, the Court is entitled to hear testimony and evidence, e.g. conduct a “de novo” review, in order to determine whether there has been a discriminatory employment practice.
Courts in other jurisdictions have held that where a “de novo review” is required, summary judgment is still an available procedure. DeLucia, v. Rums, 11 Conn.App. 439, 443, 527 A.2d 1234 (1987) (summary judgment available in a condemnation action where parties were entitled to a trial de novo); James v. Office of Victim Services, 1997 WL 325486, 19 Conn. L. Rptr. 586 (Conn.Super.1997) (appeal of adverse decision of victim compensation commissioner is by trial de novo and therefore summary judgment is available). Also, in Lovoi v. MTGA, 2 G.D.R. 106, 5 Am. Tribal Law 335, 2004 WL 5660116 (2004) the court denied a motion for summary judgment in an action under M.T.O.2002-04 where the motion was not supported by any documents whatsoever, but implicitly recognized that summary judgment was an available remedy in such action.
The Court rejects the Plaintiffs argument and holds that where a “de novo” review is required under M.T.0.2002-04, summary judgment is still available.
II. There Are No Genuine Issues of Material Fact
Based on the pleadings, affidavits and other documents the Court finds the following facts:
1. The Plaintiff was employed by the Mohegan Tribe (“Tribe”) Public Works Department as a crew leader.
2. The Plaintiff was disciplined on August 14, 2003, when his supervisor issued a Record of Discussion for making rude comments to another employee.
3. On or about August 13, 2003, the day before the Record of Discussion, the Plaintiff used crude language toward another employee.
4. At least up until December 11, 2003, the Plaintiff continued to routinely use foul language within the workplace.
5. The Plaintiff swore at Steve Chole-wa, who worked in his crew, in the workplace.
6. The Plaintiff routinely used the word “homo” in conversations both in the workplace and outside.
*439 7. On the occasion in December 2003, when the Plaintiff swore at Cholewa, he was giving Cholewa job instructions.
8. Steve Cholewa complained directly to Debra Maxeiner (“Maxeiner”), Execu-live Director of Human Resources for the Tribe, about the Plaintiffs swearing at him.
9. There is no evidence that the Plaintiff ever filed a complaint against Steve Cholewa for swearing, with the Director of Human Resources, or with any supervisory or management employee of the Tribe.
10. On or about December 11, 2003, the Plaintiff was counseled by Maxeiner for using foul language towards Steve Cho-lewa. She told him that use of foul language in the workplace was inappropriate and that use of the terms “homo” and “queer” in the workplace could be considered sexual harassment.
11. At his December 11, 2003 meeting with Maxeiner, the Plaintiff had the oppor-(unity to speak and to tell his side of the story. Maxeiner listened to the Plaintiff and to his view that it was not fair that he was being written up and that Steve Cho-lewa was not.
12.On December 11, 2003, Maxeiner told the Plaintiff that he was not allowed to retaliate against Cholewa for Cholewa’s having lodged a complaint against the Plaintiff.
13.On January 14, 2004, the Plaintiff met with Maxeiner and Tom Acevedo (“Acevedo”), Chief of Staff for the Tribe, to inform the Plaintiff of the Tribe’s decision to terminate his employment. Although the Plaintiff also had the opportunity to be heard at this meeting, he swore and left the meeting.
14.Plaintiff received notice of his ter-urination on January 14, 2004 and then by a letter dated January 14, 2004.
15. On January 23, 2004, Acevedo, met with the Plaintiff again; listened to the Plaintiffs objections regarding his termination; and informed the Plaintiff that the decision to terminate him would not be changed.
16. Mohegan Tribe Policy #24, Rule # 1 provides that it is unacceptable conduct which shall result in disciplinary action for employees, if employees use “[r]ude, discourteous or offensive conduct ... towards employees”.
17. Mohegan Tribe Policy # 24, Rule # 3 provides that it is unacceptable conduct which shall result in disciplinary action for employees, if employees engage in “[disorderly conduct, which includes ... use of abusive language.”
18. Mohegan Tribe Policy #24, Rule # 4 provides that it is unacceptable conduct which shall result in disciplinary action for employees, if employees engage in “threatening any person on or off duty which adversely reflects on the Mohegan Tribe.”
19. Mohegan Tribe Policy # 51 strictly forbids sexual harassment in the workplace.
20. The Plaintiff objected to his termination because it cited sexual harassment as one of the grounds for termination.
IV. The Plaintiffs Employment Claims Have No Evidentiary Basis and Do Not Fall within the Scope of M.T.0.2002-04
The Plaintiff, apparently recognizing that employment related claims are narrowly limited under the Ordinance, alleges that he “was terminated in retaliation for having exercised rights under the Mohegan Tribal Regulations.” (Complaint, ¶ 14). The Plaintiffs claim has two components: (1) that he was terminated for having exercised rights under the Mohegan *440 Tribal Regulations; and (2) that his termination was in retaliation for exercising those rights.
“The sovereign immunity of The Mohegan Tribe has not been waived so as to allow the bringing of wrongful discharge or other employment-related claims except as specifically set forth in M.T.0.2002-04, the Mohegan Tribal Discriminatory Employment Practices Ordinance.” Creasey v. MTGA, 2 G.D.R. 26, 27-28, 4 Am. Tribal Law 570, 2002 WL 25795204 (2003). See also, Bethel v. MTGA, 1 G.D.A.P. 1, 4, 2 Am. Tribal Law 372, 2000 WL 35732912 (2000). Therefore, the exclusive remedy available to a Tribal employee who seeks redress for an adverse employment decision is an action under the provisions of M.T.0.2002-04. The Plaintiffs employment based claims must therefore fall within the scope of M.T.0.2002-04.
The Ordinance proscribes certain employment practices by the Tribe. It provides that it is an unlawful employment practice for “an Employer to discriminate, with respect to ... discharging ... or layoff, on account of an Individual’s ... (C) exercised [sic] rights under ... any Tribal law or regulation.” M.T.O.2002-04, § 104(C).
In addition, retaliatory action is prohibited under M.T.0.2002-04, § 106:
An Employer is prohibited to [sic] discharge or in any other- manner discriminate against an employee as a result of such employee’s filing of a complaint relating to this Ordinance or as a result of the employee testified [sic] or is about to testify in a proceeding related to this Ordinance.
Paragraph 14 of the Plaintiffs Complaint can be fairly read to allege that the Plaintiffs termination was a violation of M.T.0.2002-04 because the Plaintiff was discharged for having exercised rights under Mohegan Tribal Regulations. The Plaintiff claims to have exercised the right to report alleged violations of the Mohegan Tribe’s Policy and Procedures Manual (“Manual”) under Policy # 60 of the Manual (Complaint, ¶ 7) and the right to file a complaint of sexual harassment under Policy # 51 (Plaintiffs Objection, pp. 7-8). The Plaintiff, however, has never filed a complaint with the Human Resources Office of the Tribe under any Mohegan ordinance, policy or regulation (Maxeiner affidavit). The Plaintiff has not provided any record or evidence of a Complaint he made to Human Resources or to anyone else (including supervisory or management employees) of the Tribe. Therefore, his claim that he was discharged for having exercised rights under Mohegan Tribal Regulations has no evidentiary basis. Moreover, the Defendant has shown that the Plaintiff was discharged for having violated Mohegan Tribal Work Rules and Mohegan Tribal Policies against sexual harassment.
The second component of the Plaintiffs claim under M.T.0.2002-04 is that he was terminated in retaliation for having exercised rights under the Mohegan Tribal Regulations. However, M.T.0.2002-04 does not contain a broad based anti-retaliation provision and only prohibits retaliation against an employee who has engaged in two types of conduct as set forth in the Ordinance: when the retaliation is a result of the “employee’s filing of a complaint relating to this Ordinance ” or as a result of “the employee testified [sic] or is about to testify in a proceeding related to this Ordinance.” M.T.0.2002-04, § 106.
The Plaintiffs claim of retaliation is that he was retaliated against for having made a complaint against Cholewa under Policy #51 (Plaintiffs Objection). In his affidavit, the Plaintiff says he made a com *441 plaint against Cholewa because Cholewa swore at him (Plaintiffs affidavit, paragraph 3). Even if the Plaintiff could show that he filed a complaint against Cholewa for swearing, that would not be a complaint relating to the Ordinance. There is no evidence that prior to the Plaintiffs termination on January 14, 2004, the Plaintiff filed any complaint relating to the Ordinance or that he testified or was about to testify in any proceeding related to the Ordinance (Maxeiner affidavit). The Complaint in this case was not filed until March of 2004. The provisions of M.T.0.2002-04 must be strictly construed, Bethel v. MTGA, 1 G.D.A.P. 1, 4, 2 Am. Tribal Law 373, 2000 WL 35733912 (2000).
The Plaintiffs claim that he was terminated for having exercised rights under the Mohegan Tribal Regulations has no evidentiary basis. Further, the Plaintiffs claim that the alleged retaliation was for his complaining about Cholewa’s swearing, is not within the scope of the anti-retaliation provision in the Ordinance.
V. The Plaintiff Had Sufficient Opportunity to Be Heard
The Plaintiff claims that the Defendant failed to afford him with due process in connection with the investigation of complaints against him and in connection with the termination of his employment. Entitlement to procedural due process requires an underlying substantive entitlement or a protected property right. Pineiro v. Office of Director of Regulations, 1 G.D.R. 43, 44, 2 Am. Tribal Law 386, 1999 WL 34976688 (1999), citing New England Savings Bank v. Lopez, 227 Conn. 270, 630 A.2d 1010 (1993). This Court has not yet decided whether an employee of the Tribe has a protected property right in his or her employment, nor need the Court decide that issue in this case, because even if any process was due to the Plaintiff, the Plaintiff was accorded ample due process.
On August 14, 2003, the Plaintiffs supervisor, Bruce Watt (“Watt”) had a discussion with the Plaintiff about Plaintiffs rude comments to another employee. The Plaintiff agreed that he made a rude comment but denied that he faded to follow his supervisor’s instructions concerning work assigned to him. Watt made a record of the Plaintiffs position and Plaintiffs disagreement. This discussion gave the Plaintiff the opportunity to meet with his supervisor and to state his position regarding his compliance or lack of compliance with the Ti'ibe’s employment policies.
Again on December 11, 2003, Maxeiner met with the Plaintiff to discuss his use of foul language in the workplace and his use of the terms “homo” and “queer” in connection with Steve Cholewa. The Defendant alternately characterizes this meeting as a “disciplinary hearing” and a “disciplinary meeting.” Regardless of which it was, the December 11, 2003 meeting afforded the Plaintiff with the opportunity to tell Maxeiner his side of the story and Maxeiner listened to both his explanation and his complaint that he was being written up while Cholewa was not.
On January 14, 2004, the Plaintiff had the opportunity to object to his termination when he met with Maxeiner and Acevedo, but simply swore and left the meeting. Further, the Plaintiff also met with Acevedo after his termination and after listening to the Plaintiff Acevedo told the Plaintiff that his termination would stand.
At three different levels and on four separate occasions, the Plaintiff was heard by supervisory and/or management employees of the Tribe concerning his conduct and the propriety of his termination. The Plaintiff was therefore afforded ample due process.
*442 The Plaintiff also cannot prevail on his claim that the Tribe violated its progressive discipline policy in Mohegan Tribal Policy # 59, by failing to give him a written warning before his termination. Tribal Policy # 59 expressly provides that the Human Resources Director is authorized to proceed directly to termination depending on the severity of the offense. Therefore, the number and progression of informal discussions, Records of Discussions, Written Warnings and Suspensions is not fixed and Maxeiner had the discretion to determine that termination was warranted based upon the severity of the offenses.
VI. The Plaintiffs Claim of Slander is Barred by Sovereign Immunity
The Plaintiff contends that he was slandered by the Defendant because he was terminated for sexual harassment and that he is entitled to damages for this alleged tortious conduct.
“Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.” Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). “As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.” Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). “Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits for damages against a tribe.” Romanella v. Hayward, 933 F.Supp. 163, 167 (D.Conn.1996), aff'd, 114 F.3d 15 (2nd Cir.1997). The issue of sovereign immunity is jurisdictional in nature. Kizis v. Morse Diesel Int’l, et al., 260 Conn. 46, 51-52, 794 A.2d 498 (2002).
It is well established that the Mohegan Tribe of Indians of Connecticut is a sovereign Indian Tribal entity. Id. at 53-54, 794 A.2d 498; Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., supra, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981; Winslow v. MTGA 2 G.D.R. 48, 49, 5 Am. Tribal Law 292, 2004 WL 5660105 (2004); Pirolli v. MTGA, 1 G.D.R. 25, 1 Am. Tribal Law 411, 1998 WL 35281216 (1998); Ager v. Office of the Director of Regulation, 1 G.D.R. 1, 2 (1997); Long v. MTGA 1 G.D.R. 5, 1 Am. Tribal Law 385, 1997 WL 34678573 (1997).
The Plaintiffs allegations of tor-tious conduct arise out of the employment relationship between the Plaintiff and the Defendant. The Tribe, however, has not waived its sovereign immunity from wrongful discharge or other employment related claims, except to the extent the claims fall within M.T.O.2002-04. Creasey v. MTGA, supra, 2 G.D.R. 27-28, 4 Am. Tribal Law at 572-74, 2003 WL 25795204. The Mohegan tribal law has no counterpart to the Mashantucket Employment Appeals Ordinance, M.P.T.O. 061694-03, Ager v. Office of the Director of Regulation, supra,, 1 G.D.R. at 4, 1 Am. Tribal Law at 384-85, 1997 WL 34678574. M.T.O. 2002-04 makes it unlawful to discriminate against an employee only for those grounds in § 104(A)-(E) but slander is not included in those grounds.
Waivers of sovereign immunity may not be implied, but must be expressed unequivocally. McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989); Long v. MTGA, supra, 1 G.D.R. at 10, 1 Am. Tribal Law at 394-95, 1997 WL 34678573. Because the Tribe has not waived its immunity from suit for slander in M.T.O.2002-04, *443 the Plaintiffs slander claim must be dismissed.
VII. Conclusion
The Plaintiffs slander claim is dismissed for lack of subject matter jurisdiction. The Tribe has not waived its sovereign immunity for slander claims in M.T.O. 2002-04.
As to the balance of the Complaint, there are no genuine issues of material tact. The Plaintiffs claim that he was discharged for having exercised rights nn-der Mohegan Tribal Regulations has no evidentiary basis and his claim that he was terminated in retaliation for having exercised rights under the Mohegan Tribal Regulations does not fall within the scope of M.T.0.2002-04. Further, the Plaintiff was afforded due process in connection with the investigation and termination of his employment. Therefore, summary judgment shall enter for the Defendant on all of the remaining claims in the Plaintiffs Complaint.

. Connecticut Practice Book § 17-49 sets forth the standard for granting a summary judgment motion as follows: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” In addition, § 49f of the Gaming Disputes Court Rules of Civil Procedure provides the following similar standard for summary judgment: "Judgment shall be rendered forthwith if the pleadings and any other proof show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law.”