MEMORANDUM OF DECISION ON DEFENDANT’S “MOTION FOR SUMMARY JUDGMENT”
WILSON, Judge.
I.

Introduction

The pro se Plaintiff filed the complaint in this action under the Mohegan Discriminatory Employment Practices Ordinance, MTO 2002-04 (The “Ordinance”) against the Defendant Mohegan Tribal Gaming Authority (“MTGA”) and a MTGA employee, William Velardo. She alleged that she was discharged from her employment with the MTGA as a result of discriminatory employment practices, and she requested the court to order such relief as is proper and available under the Ordinance.
After a series of pleadings, issue was joined and the Defendant MTGA [1] moved for summary judgment on the grounds that the Plaintiff has “no viable cause of action”; that she “states a litany of petty grievances, many of them imaginary”; and that the Defendant “had substantial, legitimate, non-discriminatory reasons for dismissing the Plaintiff from employment.” For the reasons herein stated, the Defendant’s Motion for Summary Judgment is granted.
II.

Procedural History

The Plaintiff, a 52 year old female former employee of the Defendant MTGA, filed a Discriminatory Employment Practice Complaint dated November 30, 2002 alleging that she was wrongfully, and dis-criminatorily, terminated from her employment at Fidelia’s Restaurant at the Mohegan Sun Casino, a gaming facility operated by the Defendant MTGA. The initial complaint named as Defendant both the MTGA and William Velardo, a MTGA employee.
The MTGA is the authorized agency of the Mohegan Tribe of Indians of Connecticut, a federally recognized Tribe. The Mohegan Tribe duly adopted a Mohegan Tribal Discriminatory Employment Practices Ordinance, MTO 2002-04, “in order to provide anti-discriminatory provisions for its employment applicants and its employees.” § 1.02
Plaintiffs complaint alleged discriminatory employment practices based on “gender”, “age’, “physical disability when reasonable accommodation is possible”, “exercise of rights under Connecticut Workers Compensation Act, Tribal Law or Regulation”, and “retaliation a-, a íe-sult of the filing of a complaint, or the testimony or being about to testify in a proceeding under the Mohegan Tribal Discriminatory Practices.” The complaint *502 attached an un-sworn “affidavit” of the Plaintiff in which she alleged wrongful termination.
There followed a series of pleadings including requests to revise the complaint, amended complaints, and motions directed at the pleadings. On October 17, 2003 this court granted the Defendant’s Motion to Strike as to the Defendant William Velar-do, thereby dismissing the case as to him. Lovoi v. MTGA, 2 G.D.R. 32, 4 Am. Tribal Law 574, 2003 WL 25705205 (2003); this court also dismissed additional counts filed by the Plaintiff against the Defendant MTGA on the grounds that they were either redundant to the original complaint and/or barred by the sovereign immunity of the Tribe. Ibid. Thereafter, the court clarified that ruling and reiterated that the Plaintiffs original complaint stated claims cognizable under MTO 2002-04, against the MTGA only. Lovoi v. MTGA, 2 G.D.R. 84, 5 Am. Tribal 333, 2004 WL 5660104 (2004). The Plaintiff then moved for summary judgment. Because the Plaintiff failed to comply with Rule 49 of the Rules of Civil Procedure by filing any documents which showed that there was no genuine issue as to any material fact and that the Plaintiff was entitled to judgment as a matter of law, the court denied the motion. Lovoi v. MTGA, 2 G.D.R. 106, 5 Am. Tribal Law 333, 2004 WL 5660116 (2004). Thereafter, the Defendant filed an answer which denied the allegations of the Plaintiffs complaint and specially pleaded four special defenses, which the Plaintiff has denied.
The Court granted the Defendant’s Motion for Leave to File a Motion for Summary Judgment[2] and the Defendant has now so moved.
The Defendant’s motion argues that the “Plaintiff has demonstrated she has no viable cause of action”; that she does not state facts to support a claim under MTO 2002-04; that there were “substantial, legitimate non-discriminatory reasons for dismissing the Plaintiff from employment,” and “that she was given notice of her shortcomings and the opportunity to correct them.” As required by Rule 49 of the Rules of Civil Procedure the Defendant filed in support of its motion, a Memorandum , of Law, sworn affidavits of Mark Smith, Nada Valentin, and defense counsel, and eight exhibits, including records of discussion, incident reports, personnel action forms, a job description form and the Plaintiffs deposition testimony.
The Plaintiffs objection to the Defendant’s Motion consists of a Memorandum arguing, pro se, that she does have a viable cause of action and “that the Defendant’s intentionally and maliciously discriminated against this Plaintiff wrongfully and unprofessionally.” She appended a newspaper account of the recent decision of the U.S. Supreme Court in Smith v. (My of Jackson, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) which she argues supports her claim. She did not file any opposing affidavits or other documentary evidence as provided by Rule 49.
*503 Oral argument was had and both parties presented their arguments. The court finds that the pleadings and other proof show that there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law.
III.

Applicable Law

A. MTO 2002-04

This action is brought pursuant to MTO 2002-04 the “Mohegan Discriminatory Employment Practices Ordinance;” which has the following relevant provisions:
§ 102(C)(1) of the Ordinance provides that the Tribe “does not consent to the applicability of Title VII of the Civil Rights the Age Discrimination in Employ - ment Act, or the American Disabilities Act
: Subsection (C)(3) provides that in the event of any conflict between the provisions of MTO 2002-04 and the Mohegan Tribal Employment Rights Ordinance, (“TERO”), the provisions of TERO shall prevail.
The following must be noted about § 102:
“ ... Statutes (other than ERISA) that would regulate the relations between tribes and their employees have generally been ruled inapplicable [to Indian Tribes] . .. Title VII of the Civil Rights Act of 1964 expressly excepts Indian Tribes from coverage. 42 U.S.C. § 2OO0e(b) ... The Age Discrimination in Employment Act (Af)EA), which has no such exception, has been ruled to be inapplicable [to Indian Tribes] as an undue interference, respectively, with treaty or inherent rights of tribal self-government.” Canby, American Indian Law, 284 (4th Ed.2004) (citation omitted.) See Winslow v. MTGA, 2 G.D.R. 48, 49, 5 Am. Tribal Law 292, 2004 WL 5660105 (2004).
Other relevant provisions of the ordinance include a definition of “Age” as “at least forty (40) years of age”; Sec. 103(A); and “development period” as “the ninety (90) day period that runs from the date the employee commences work for the Employer.”
§§ 104 and 105 describe the practices declared to be unlawful, and not unlawful, and § 106 the prohibition of retaliatory action, as follows:
“ § 104, Practices declared unlawful.
It shall be an unlawful employment practice for an Employer to discriminate, with respect to hiring, discharging, compensation, benefits, demotion, disciplining, suspending, barring, or layoff, on account of an Individual’s:”
(A) race, gender, color, national origin, pregnancy or related medical condition, age ancestry, marital status, sexual orientation, or military status; or
(B) religion or mental or physical disability when Reasonable Accommodation is possible; or
(C) exercised rights under the standards of the State of Connecticut’s Workers’ Compensation Act, or under any Tribal law or regulation; or
(D) participation in reporting, in good faith, an Employer’s violation of a Mohegan Tribal law or regulation to a Mohegan Tribal governmental or regulatory agency; or
(E) participation, as requested by a Mohegan Tribal governmental or regulatory agency, in an investigation or hearing held by such agency;
S 105. Practices that shall not be declared unlawful.
*504 It shall not be unlawful or considered employment discrimination, if the employment practice:
(A) constitutes a legitimate implementation by the Employer of a bona-fide occupational qualification or need; or
(B) was a result of a legitimate, nondiscriminatory business decision; or
(C) implements the provisions of any Mohegan Tribal law including, but not limited to the Tribal Employment Rights Ordinance (TERO) regarding preferences in employment, including, but not limited to recruiting, hiring, training, and promotions for members of the Tribe, their spouses and enrolled members of other federally recognized Tribe; or
(D) constitutes implementation by the Employer of a bonafide seniority system or a bonafide job classification for compensation, rights, and/or benefits; or would have occurred notwithstanding any discriminatory employment practice; or
(E) is facially neutral and only has the impact or deleterious effect onto a class of Individuals who are otherwise protected under this Ordinance.
§ 106. Retaliatory Action Prohibited.
“An Employer is prohibited to discharge or in any other manner discriminate against an employee as a result of such employee’s filing of a complaint relating to this Ordinance or as a result of that employee testified or is about to testify in a proceeding related to this Ordinance.”
B.

Summary Judgment Provisions

The Defendant’s Motion for Summary Judgment is governed by § 49 of the Rules of Civil Procedure of this court, which provide in relevant part:
“ § 49 ... b. Proceedings on Motion. A motion for summary judgment shall be supported by such documents as may be appropriate including affidavits, depositions, disclosures, written admissions and like documents which show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party shall file opposing affidavits or other documentary evidence as provided in this rule within the time set forth in § 15d, setting forth specific facts showing that there is a material issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
c. Form of Affidavits. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto.
d. When Appropriate Documents Unavailable. Should it appear from affidavits of a party opposing a motion for summary judgment, that he cannot, for reasons stated in an affidavit filed with the court, present tacts essential to justify his opposition, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.” ...
*505 “f. Judgment. Judgment shall be rendered forthwith if the pleadings and any other proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.”
The standard for deciding Motions for Summary Judgment has been set forth in Wallace v. MTGA, 2 G.D.R. 51, 5 Am. Tribal Law 295, 2004 WL 5660109 (2004) as follows:
“Pursuant to [Rule 49 and] Connecticut Practice Book § 17-49, Summary Judgment can be granted if the pleadings, affidavits and other documentary proof, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.” Connecticut Practice Book § 17-49; Bartha, v. Waterbury House Wrecking Co., Inc., 190 Conn. 8, 11, 459 A.2d 115 (1983), Marcean v. Norwich, 46 Conn.Supp. 197, 200, 746 A.2d 836 (1999). In passing on a Motion for Summary Judgment, the trial court is to determine whether an issue of fact exists, but may not try that issue if it does exist. Dorazio v. M.B. Foster Electric Co., 157 Conn. 226, 228, 253 A.2d 22 (1968).
The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. Suarez v. Dickmont Plastics Corporation, 229 Conn. 99, 105, 639 A.2d 507 (1994) (quotations omitted). A material fact is a fact that will make a difference in the result of the case. Yanow v. Teal Industries, Inc., 178 Conn. 262, 422 A.2d 311 (1979). “In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.” Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059, (2000). Summary judgment “is appropriate only if a fair and reasonable person could conclude only one way.” Miller v. United Technologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
Once the moving party has presented evidence in support of the Motion for Summary Judgment, the opposing party must present evidence that demonstrates the existence of some material, disputed factual issue. Daily r New Britain Machine Co., 200 Conn. 562, 568, 512 A.2d 893 (1986). It is not enough for the opposing party merely to assert the existence of a disputed issue. Id., Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998). The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Appleton v. Board of Education, supra, 254 Conn. at 209, 757 A,2d 1059.
The purpose of summary judgment procedure is to allow the court to prevent vexatious and dilatory tactics and to facilitate the expeditious disposition of cases. Ryan v. Dionne, 28 Conn.Supp. 35, 248 A.2d 583 (1968). “Motions for Summary Judgment are designed to eliminate the delay and expense incident to a trial when there is no real issue to be tried.” Dorazio v. M.B. Foster Electric Co., 157 Conn. 226, 228, 253 A.2d 22 (1968). Therefore, “the court is free to render judgment in favor of the moving party upon a showing of the absence of issues of material fact.”[3]
*506 C.

Smith v. City of Jackson

The only document submitted by the Plaintiff with her objection to the Motion for Summary Judgment was a newspaper article reporting on the decision of the U.S. Supreme Court in Smith v. City of Jackson, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). The Plaintiff argues that Smith supports her claim that “Plaintiffs who are being discriminated against because of their age do not have to prove intent that the discrimination is occurring.” (at p. 6 of her objection.)
Smith was a suit brought by police and public safety officers contending that a certain city salary plan violated ADEA because they were less generous to officers of age 40 than to younger officers. The suit claimed both that the City deliberately discriminated against them because of their age (a “disparate-treatment” claim) and that they were adversely affected by the plan because of their age (the “disparate-impact claim”). The “disparate-treatment” claim had been held to be premature, and was not in issue before the Supreme Court. In the “disparate-impact” claim the Supreme Court held that while the ADEA authorizes recovery in “disparate-impact” claims, the petitioners did not set forth a valid disparate-impact claim. In the plurality opinion (joined in by only four justices of the eight who decided the case) the court held that in a “disparate-impact” case under the ADEA, the Plaintiffs %Tould not have to prove intentional discrimination, but since the Plaintiff did not set forth a valid claim, the court affirmed the judgment in favor of the city-employer.
Leaving aside the non-applicability of ADEA to the Defendant (see III A, above) the precise holding in Smith is not applicable here because this is not a “disparate-impact” case. As the majority (of five justices) in Smith observed, the petitioners there “have not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers .... it is not enough to simply allege that here is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.” (internal quotation marks and citations omitted). 125 S.Ct. 1536 at [1552]. Likewise here, in the context of the instant motion, the Plaintiff has not adduced any admissible evidence to raise the genuine issue of material fact as to any disparate-impact, any generalized policy, any specific practices, or any statistical disparities. Thus the holding in Smith does not relieve the Plaintiff from proving discriminatory intent.
To the contrary, Justice O’Connor’s opinion concurring in the judgment in Smith makes it clear that the Plaintiff has the burden of proving discriminatory intent before liability may be imposed on an employer.
In interpreting MTO 2002-04 this court is guided by the reasoning of Justice O’Connor’s opinion concerning intent in “disparate-treatment” cases such as this. MTO 2002-04 § 104 declares certain practices unlawful when they are taken “on account of an individual’s:” “race,” “gender,” “age,” or other protected characteristics. Sec. 4(a)(1) of the ADEA pro *507 scribes similar practices when taken “because of such individual’s ageJustice O’Connor notes that this paragraph obviously does not authorize disparate-impact claims. Rather, in “disparate-treatment” cases “that provision plainly requires dig-criminatory intent, for to take an action against an individual” “because of such individual’s age” is to do so “by reason of’ or “on account of’ her age. See Webster’s Third New International Dictionary 194 See also Teamsters v. United States, 431 U.S.C. 324, 335-336, N. 15 (1977). “Proof of discriminatory motive is critical.” Smith v. City of Jackson, 125 S.Ct. 1536 at [1550] (O’Connor, J., concurring in the judgment.) So here, where the Ordinance proscribes certain practices “on account of” one or more of the individual’s protected characteristics, it requires proof that it ,was “because of” or “by reason of” such characteristic. Hence in this case the Plaintiff must produce some admissible evidence from which the court can find that there is a genuine issue of material fact as to whether the Defendant discharged the Plaintiff because of, by reason of, or on account of one or more of the protected characteristics, i.e., that the Defendant acted with discriminatory intent or motive.
D.

McDonnell Douglas Corp. v. Green

Defendant's Memorandum of Law anticipates that the court might follow the “burden-shifting procedure set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), [under which] Plaintiff must first establish a prima fade case by showing that she is a member of a protected class; was qualified for the position; was terminated; under circumstances giving rise to an inference that discrimination was the reason for the termination.” The Defendant then argues that “Defendant does not admit that Plaintiff was qualified for the position, but even taking that out of the equation,[4] there is no reasonable basis upon which to conclude that the circumstances provide a basis for an inference of discrimination.”
The principles of McDonnell are that if the Plaintiff establishes a prima facie case as aforesaid, the burden shifts to the Defendant to show a legitimate non-diserimi-natory reason (LNR) for the termination. If the Defendant makes such a showing, the burden then shifts back to the Plaintiff to show that the LNR was a “pre-text.”[5]
It is not clear whether the McDonnell Douglas framework applies to this case. McDonnell was a Title VII case, and Title VII excepts Indian Tribes. Also, even if McDonnell applies to ADEA suits, the Tribe has not waived immunity with respect to ADEA.
Further, the Ordinance itself encapsulates the basic principles of McDonnell Dougins by declaring in § 104 those practices which are deemed to be unlawful and then in § 105 declaring those practices that shall not be declared unlawful including a practice that “(B) was a result of a legitimate, non-diseriminatory business decision,” the Ordinance’s equivalent of the McDonnell Douglas LNR.
*508 Finally, the U.S. Supreme Court has noted that in a disparate-treatment case, if an employer acted on a factor other than age, the action would not be prohibited under subsection (a) of the ADEA, (the equivalent of § 104 of the Ordinance), in the first place. Smith v. City of Jackson, supra at [45] (plurality opinion of Justice Stevens); “There is no disparate treatment under ADEA when the factor motivating the employer is some feature other than the employee’s age.” Ibid,. In a Title VII case “an employer can defeat liability by showing that the employee was rejected for a ‘legitimate, non-discriminatory reason.’...” Ibid.
For these reasons the court does not refer to the McDonnell Douglas framework, as such; rather, for purposes of the Defendant’s instant motion, the court must determine if there is a genuine issue of material fact as to whether the Defendant violated § 104 of the ordinance, that is, whether the Defendant terminated the Plaintiffs employment “on account of” one of the protected characteristics, and not as a “result of a legitimate non-discriminatory business decision” as provided in § 105.
IV.

Application of the Foregoing Principles of Law to the Facts of this Case

 In accordance with § 49 of the Rules of Civil Procedure the court now examines those documents submitted by the Defendant in support of its motion to determine whether those documents “show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law;” and those documents submitted by the Plaintiff in opposition to the motion to determine whether those documents set “forth specific facts showing that there is a material issue for trial.” The court will consider only those documents which “set forth facts as would be admissible in evidence.” § 49c. The issue before the court is to determine whether an issue of fact exists, and not to try that issue if it does not exist. Wallace v. MTGA, 2 G.D.R. 51, 5 Am. Tribal Law 295, 2004 WL 5660109 (2004). The court must view the evidence in the light most favorable to the Plaintiff. Ibid.
A.

Defendant’s Documentary Evidence, Affidavits

1. Affidavits of Mark A Smith, Director of Food and Beverage for the Mohegan Sun Casino.
Mr. Smith attested that Plaintiff was hired as a hostess for Fidelia’s Restaurant on August 21, 2002, and was subject to a 90-day development period common to all MTGA employees. During that period employees, including the Plaintiff, are trained and observed closely as to job performance. After five weeks, by October 5, 2002, a number of performance issues had been observed. These were that she had seated customers in portions of the restaurant that had been closed; seated customers out of rotation; not communicated effectively with other hosts/hostesses and with her supervisor; engaged in rude, discourteous and offensive conduct toward guests, other employees, and supervisors; refused to comply with supervisors’ instructions; and engaged in excessive conversations with guests slowing down the service to others. Smith, together with Nada Valentin, Fidelia’s Manager, met with the Plaintiff on October 5, 2002, reviewed these issues with her, and gave her a written “Record of Discussion” and a Memorandum with detailed points of concerns. Smith and Valentin emphasized to the Plaintiff that she was in the development period and that immediate and sus- *509 tamed improvement was required in her performance to avoid further disciplinary action. On October 13, 2002 Plaintiff seated customers at the wrong table and in the wrong section. This was considered evidence that she was not complying with the policies and procedures as she had been directed. Also, on October 14, she attempted to make some arrangements at another entity in the Casino even though she was not authorized to do so, and even though her supervisor was already handling the issue. Although Smith characterized the latter issue as minor, he attested that it was consistent with patterns of behavior in which Plaintiff seemed to think she could make independent decision without regard for management directives (such as seating customers whore she chose to do so rather than where management directed her).
Smith reviewed these matters with Valentin and with Tony Deniston, Employee Relations Director, and they made a decision to terminate the Plaintiffs employ - ment. On October 17, 2002 they met with Plaintiff and informed her that she had failed to successfully complete the development period and that she was being terminated.
Smith attested that the decision to ter-mínate Plaintiffs employment was purely based on her unsatisfactory performance and inability to follow Fidelia’s policies and procedures.
2. Affidavit of Nada Valentin, Manager of Fidelia’s Restaurant.
Valentin attested that Fidelia’s is a large restaurant with seating for a large number of people, and that the management makes decisions where to seat customers for efficient service and fair distribution of the workload and tips. Plaintiff was instruet-ed on the seating procedures to be followed but she ivas resistant to following Valentin’s instructions and the instructions of supervisors, especially with regard to seating assignments. Valentin reiterated Smith’s Affidavit testimony as to Plaintiffs seating customers at the wrong tables and/or sections, and her inability or unwillingness to comply with policies and procedures. Valentin determined that the Plaintiff should be terminated; Smith and Deniston agreed; and Plaintiff was terminated purely based on her unsatisfactory performance and inability to follow Fide-lia’s polices and procedures.
3. Affidavit of Andrew Houlding, Attorney for the Defendant.
Houlding attested that he took the Plaintiffs deposition by telephone pursuant to an order of this court. The order provided that the Plaintiff was to provide copies of documents that she considered would support her claims. Houlding did not receive any documents from the Plaintiff other than the various pleadings that she filed with the court and various letters concerning her claims. She provided no documents or exhibits that were generated in connection with her employment by MTGA. Houlding sent the transcript of the deposition to the Plaintiff along with the Errata sheet so that the Plaintiff could make any necessary corrections and the Jurat sheet to sear as to the accuracy of the transcript. As of April 15, 2005, the Plaintiff had not returned the Jurat or the Errata sheet.
Defendant ⅛ Exhibits
1. Record of Discussion; and
2. Memorandum dated October 5, 2002, referred to in Smith Affidavit, para, 1, Supra.
This is a written record of a discussion, and a memorandum from Valentin and Smith to Plaintiff concerning non-compli- *510 anee with established policies and procedures including carelessness and negligence in the performance of duties (with six specifications); rude, discourteous, and offensive conduct toward guests, other employees, and supervisors including refusal to comply with supervisor instructions without reasonable cause (with three specifications); contributing to a hostile work environment (one specification); and failure to comply with departmental rules or procedures (with three specifications).
3. Mohegan Sun Incident Report dated October 14, 2002, concerning the seating out of turn and at the wrong tables and/or sections on October 13, 2002.
4. Incident report of Valentin concerning the termination of the Plaintiff on October 17, 2002.
5. Deposition of Josephine Lovoi.
6. Personnel Action Form of the Plaintiffs hiring on August 28, 2002 as a hostess.
7. Mohegan Sun form re: job duties and minimum qualifications.
8. Personnel Action form of Plaintiffs termination on October 17, 2002 for failure to complete 90-day development period.
The Defendant argues that the foregoing sho%T that there is no genuine issue as to any material fact and that the Plaintiff was not discharged on account of any of the characteristics protected under the Ordinance, but that she was discharged for the legitimate non-discriminatory reasons of failure to complete successfully the 90-day development period because of Plaintiffs failure to comply with the managements’ policy and procedure.
B.

Plaintiff's Documentary Evidence

The Plaintiff did not submit any affidavits-in opposition to the Plaintiffs motion. Nor did she submit, as required by § 49, any depositions, disclosures, written admissions or other documentary evidence setting forth specific facts showing that there is a material issue for trial. § 49 provides that.“If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.”
Because of the failure of the Plaintiff to “so respond,” the court will review the Plaintiffs arguments in opposition to the Defendant’s Motion to determine if summary judgment is “appropriate” to be entered against the Plaintiff. The Plaintiff made the following arguments:
1. That she “does in fact have a viable cause of action;”
2. That when she was employed “she was 52/53 years old and is now facing her 55th birthday on June 5, 2005;”
3. That she was educated, had acquired skills and had life time experiences;
4. That “this was a threat to Mark Smith ...
5. “Ms. Valentin was a young female
6. These are some personal attacks on Valentin and Smith;
7. That the “write-up” of the Plaintiff was a conspiracy and the lack of ability of Mark Smith and Ms. Valentin to manage in a fair and responsible manner;
8. That Valentin showed favoritism and told lies;
9. That the Defendant’s documentary evidence is faulty;
10. That she is entitled to a trial so the truth can come out;
11. That the Plaintiff had no favoritism toward any waiters;
*511 12. That she capably performed her work as a hostess;[6]
13. That Exhibit 7 (Para A. 8., supra) should be stricken “because it does not apply to this Plaintiff. This Plaintiff was as Hostess (female) not a Host (male);”
14. That there was “no development;”
15. That she is entitled to a trial in order to prove what she has been trying to say;
16. That her deposition “was wrongfully submitted without corree! ions. Therefore, allegedly misleading this court.” (The Plaintiff has not offered any eorrec-tions, or made any motions with respect to the transcript.);
17. That she was more than qualified;
18. There are some personal attacks towards William Velardo and “Kevin [BJVogel;”
19. “One female hostess employed at the same time of the Plaintiff who was also in her 40’s recognized the discrimination and left on her own oppose [sic] to be continually mistreated;”
20. Plaintiff attached a newspaper account of the U.S. Supreme Court decision in Smith v. City of Jackson, and argued that “Plaintiffs who are being discriminated against because of their age do not have to prove intent that discrimination is occurring”
21. “The Defendant’s intentionally and maliciously discriminated against this Plaintiff wrongfully and unprofessionally.”[7]
22. “It is a disparat [sic] impact on older workers to be employed at the Mohegan Sun Casino Resort, [sic] The Mohegan Sun Casino Resort practice was to hire, nurture and retain young employees under the age of 40 years old while misrepresenting employment record that they hire older employees and do not retain them.”
C.
Analysis of Plaintiff ⅛ Claims
1. Gender and Age
 The Plaintiff was a 52 year old female when she was discharged. She alleged a violation of the Ordinance claiming that she was discharged “on account of” her gender and age. She has riot submitted any admissible evidence that supports this allegation. Because the Defendant has presented admissible evidence in support of its motion (IV A., supra), the Plaintiff must present admissible evidence that demonstrates the existence of some *512 material disputed factual issue concerning the basic claim that the Defendant violated the ordinance by terminating the Plaintiff because of her gender or age. It is not enough for the Plaintiff merely to assert the existence of a disputed issue but she must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact as to the Defendant’s intent to discriminate. Wallace v. MTGA, 2 G.D.R. 51, 52, 5 Am. Tribal Law 295, 297-98, 2004 WL 5660109 (2004). It is not: necessary that the Plaintiff produce direct evidence of such motive. This motive may be determined by inference from facts and circumstances connected with the Plaintiffs termination. See Holden and Daly, Connecticut Evidence, Sec. 64b. Here, the Plaintiff has not shown the existence of facts and circumstances from which such an inference may be drawn, and therefore, she has not established an evidentiary foundation for a prima facie case of discrimination. cf. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[8]
Her objection summarized in B. supra, consists of opinions, conclusions, hearsay, and personal attacks unsupported by any admissible evidence. The several arguments, that she is entitled to a trial, beg the question. The question at this time is whether there .is any genuine issue for a trial.
The Plaintiffs claim that she need not prove intent is without merit. The Supreme Court in Smith v. Jackson, supra, clearly established that this is not a disparate-impact case, but a disparate-treatment case. The burden is on to the Plaintiff to show some material facts that demonstrate a genuine issue that the Defendant intended to discriminate against the Plaintiff because of her gender or age. “Proof of discriminatory motive is critical.” Smith v. Jackson, supra at [1550].
The Court finds that the Plaintiff has failed to show the existence of any material facts that she was discharged on account of, that is by reason of, or because of, her age or gender or any such facts or circumstances from which such an inference might be drawn. The court further finds that the admissible facts adduced by the Defendant show that there was legitimate non-discriminatory reasons for the Plaintiffs termination, and that there is no genuine issue as to this. Where the employer in fact acted on a factor other than age or gender, that is, where the employee was terminated for a legitimate non-discriminatory reason, there is no violation of the ordinance. See Smith v. Jacksem, supra at [1545].
2. Physical Disability ... and Exercise of Rights tinder Connecticut Workers’ Compensation Act, Tribal Law or Regulation.
Although the Plaintiff alleged these bases in her complaint, she has not argued these in her objection, nor has she offered any evidence of any genuine issue as to these allegations.
3. Retaliation as a Result of the Filing of a Complaint, or the Testimony or Being About to Testify in a. Proceeding Under the Mohegan Discriminatory. Employment Practices [Ordinance].
At various times the Plaintiff alleged that she was terminated in retaliation for her being “a federal witness.” This vague *513 unsupported allegation was not pursued in her objection to Defendant’s Motion for Summary Judgment, and the Plaintiff has not shown the existence of any facts that there was retaliation concerning any proceedings under MTO 2002-04.
V.

Conclusion

The Court finds that an issue of fact does not exist. The Defendant has shown that there is no genuine issue as to any material fact concerning the Plaintiffs termination; that she was not terminated on account of her gender of age or any other characteristic protected under MTO 2002-04; and that there were legitimate nondiscriminatory reasons for her termination. The Plaintiff has not shown any specific facts showing that there is a material issue for trial. The Court concludes that there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law.
The Defendant’s Motion for Summary Judgment is granted. Judgment accordingly.

. The Defendant’s Motion is also made by . William Velardo. The court, in a previous ⅞ decision, dismissed all claims as to Velardo. Lovoi v. MTGA, 2 G.D.R. 32, 4 Am. Tribal Law 574, 2003 WL 25795205 (2003). The court treats the instant motion as filed by the remaining Defendant, MTGA.

. The Mohegan Tribal Court has held that summary judgment may be granted in an action under MTO 2002-04 if there are no genuine issues of material fact, notwithstanding the "de novo review" provisions of MTO 2002-04 § 108. LaVigne v. Mohegan Tribe of Indians of Connecticut, No. CV-04-0114, 6 Am. Tribal Law 434, 2005 WL 6238702 (2005) (Freeman, J.). The Mohegan Tribal Court is to be distinguished from this court. The Tribal Court was created by the Mohegan Tribal Council under the Constitution of the Mohegan Tribe Article IX, Sec. 2(o). The Gaming Disputes Court was created by Article XIII, Sec, 2 of this Constitution. For purposes of this case, specifically the filing of a Motion for Summary Judgment, this court adopts the standards and reasoning adopted by the Tribal Court in LaVigne v. Mohegan Tribe of Indians of Connecticut.

. When the Court denied the Plaintiff’s previous Motion for Summary Judgment in this case, the Court set forth the standard above, and sent a copy of the decision in the Wallace case to the Plaintiff so that she would be aware of the requirements regarding Motions *506 for Summary Judgment. See Lovoi v. MTGA, 2 G.D.R. 106, 107, 5 Am. Tribal Law 335, 2004 WL 5660116 (2004).

. The court does take Delendant's denial of Plaintiffs qualifications “out of the equation:” there is at least a genuine issue of fact as to ' ■ this. - - -

. In deciding a Motion for Summary Judgment, the McDonnell Douglas burden shifting scheme is inapposite. If there is an issue of material fact concerning the question of the Plaintiff's establishment of a prima facie case, that is the end of the inquiry: the Motion will be denied. At trial if the Plaintiff meets the burden of proving a prima facie case, the burden-shifting rules will take effect.

. To the extent that the Plaintiff raises ail issue of fact as to her job performance, it is not a ‘‘material’' issue of fact, that is, it does not go to the merits of whether there was evidence of an intent to discriminate against the Plaintiff in the first instance. If there were evidence of such an intent, the Motion for Summary Judgment would be denied; at trial, the issue of the Plaintiff's job perform-anee would then be material to the question whether the Defendant's reasons for terminating the Plaintiff were mere “pre-texts” under the McDonnell Douglas formulation of the burden of proof.

. In opposing the Defendant’s Motion for Leave to File a Motion for Summary Judg-merit, the Plaintiff argued that "It appears necessary to correct the Defendant’s legal counsel lor MALICIOUSLY and intentionally falsifying information to the Court. Defendant’s legal counsel claimed that the Court set a trial date of March 31, 2004, THIS IS FALSE INFORMATION. The Court set a Trial date of March 31, 2005." (Emphasis in original). The typographical error in the Defendant’s motion was obviously inadvertent and immaterial. The characterization of the mistake as "maliciously and intentionally falsifying information to the court” demonstrates that such characterizations are to be carefully examined for any supporting evidence.

. See FN 6 in IV. B., supra. Insofar as Plaintiff showed an issue of fact as to her job performance, it is not a “material” issue of fact. The Plaintiff having failed to show a materia) issue of fact as to the Defendant's intent to discriminate, any possible issue as to Plaintiffs job performance is not germane.